**Commonwealth v. Peiffer**

*George E. Christanson,* for Commonwealth.
*Frederick S. Wolf,* for defendant.

MEYER, J., December 8, 1970.—On June 4, 1970, Ronald E. Peiffer was convicted by a jury of operating a motor vehicle while under the influence of intoxicating beverages. Thereafter, on June 11, 1970, defendant filed a motion in arrest of judgment or, in the alternative, a motion for a new trial.

Both at oral argument and in his brief, defendant apparently has abandoned his argument that he is entitled to an arrest of judgment. This is probably because of the following undisputed facts:

On November 18, 1969, at or about 6:30 a.m., defendant was involved in a collision with an oncoming vehicle. At the time of impact, defendant was on the wrong side of the highway.

Officer George Gruber, of the Lebanon City Police, arrived a few minutes after the accident and observed defendant who was lying on the front seat of his automobile with a cut in the area of his mouth. The officer immediately detected a very strong odor of alcohol on the person of defendant. Defendant objected to being taken to the hospital but was convinced to go by the ambulance crew. The ambulance driver also detected an odor of alcohol on defendant's breath at that time. Another city police officer, Robert Snyder, also investigated the accident and observed defendant at the scene. He testified that Peiffer walked in an unsure and unsteady way, and he wobbled. Peiffer was very unsure of his balance, and there was quite a strong odor of alcohol on his breath. He testified that Peiffer had to be physically restrained in order to be put on the litter to be transported to the hospital.

Peiffer was abrupt and uncooperative when questioned by the police officers as to how the accident occurred. When asked by the officer how much he had to drink, Peiffer stated, ". . . you don't count how much you drink . . ." Officer Snyder was of the opinion that the defendant was ". . . definitely under the influence of alcoholic beverages."

At the hospital, some time before 9 a.m., samples of Peiffer's blood were taken and later analyzed and found to contain 0.16 percent alcohol.

Based upon the foregoing evidence, certainly the jury was justified in concluding that defendant was indeed operating while under the influence of intoxicating beverages.

Defendant argues strongly, however, that he should be awarded a new trial, because the Commonwealth did not produce an expert witness to relate the results of the blood test taken some time after the accident back to the time defendant was driving his automobile. We do not believe the Commonwealth owes a duty to produce such a witness. We agree that if the blood test results here were the only evidence of intoxication, the trial judge should not have permitted it into evidence without expert testimony relating the results back to the time defendant was operating his motor vehicle. But there was substantial other evidence independent of the blood test results that defendant was intoxicated at the scene of the accident. Therefore, the blood test results were admissible to corroborate this other evidence.

Furthermore, we believe that a defendant who defends on the grounds that the results of the blood test taken some period of time after defendant was operating a motor vehicle is not evidence of his intoxication at that time should himself produce such an

expert witness. We are well aware of the fact that such an expert witness' opinion must depend almost entirely upon the truth of what defendant tells him with regard to such things as the amount of food in defendant's stomach at the time he was drinking, the amount and kind of alcoholic beverages he consumed, and the time he consumed them. Furthermore, it is common knowledge that people react differently to the consumption of alcoholic beverages. Therefore, the expert's testimony would be of little weight.

Finally, defendant produced no testimony other than his own. He admitted that he had been drinking and playing cards all night long. He admitted drinking six or seven 12-ounce bottles of beer during the course of the evening. He testified that he began drinking at around 9:30 p.m. and that he had his last drink at 2:30 a.m. Of course, he testified that he was not under the influence at the time he was driving home at around 6:30 a.m. of the same day. The trial jury did not believe him. Clearly, they were justified in their verdict based upon the facts produced at trial.

We do not believe that the trial judge erred in failing to require the Commonwealth to produce an expert witness to relate the blood test results back to the time of driving. This is the only basis defendant sets forth as a reason why he should be granted a new trial. Therefore, his motion will be refused.

## ORDER

And now, to wit, December 8, 1970, defendant's motion in arrest of judgment is refused, and his motion for a new trial is refused. Defendant is ordered to appear before us on December 29, 1970, at 10 a.m., in Courtroom 1 for sentencing.